Good morning, Matt Karras on behalf of the Tennessee and Michigan Catholic Entities. I would like to reserve three minutes for rebuttal. These Catholic entities exercise their religion by contracting with insurers and administrators who provide services to their employees only in accord with Catholic faith. The mandate renders that religious exercise impossible. And instead, appellants are pressured to violate their do so pursuant to a relationship that appellants have created by contract. The government does not contest that the appellants have made a religious determination that the role they play, that the acts they take, violate their beliefs. And for the government to assert that the accommodation that it has created sufficiently insulates the appellants is to simply disagree with their religious judgment. The standard in this circuit under the Living Water case and the standard that the Seventh and the Third Circuits have set in equal cases is that in a RFRA analysis, it is a two-part inquiry. One, in quoting Living Water which was a RLUIPA case, identify the religious exercise and then two, assess whether the appellants to take the action rather than refuse. In Living Water, the court asked the question, does the government action place substantial pressure on a religious institution to violate its beliefs? Here... Does the ACA, in a sense, supplant RFRA because the ACA is a later statute? No, it does not. RFRA applies to all laws enacted by Congress unless that later statute specifically exempts itself or rejects RFRA and here the ACA did not do that. Can one Congress, can an earlier Congress limit what a later Congress does by saying it has to be expressed or it has to be clear and convincing or whatever the first Congress says, can they prevent a subsequent Congress from doing whatever it wants under an easier standard? Sure, Congress can enact any set standard. Congress can say all laws have to respect these religious beliefs unless somebody says we're not going to apply by it. The government has not even suggested here that RFRA doesn't apply. So you're saying there's like a canon of construction that says that an earlier Congress can bind a later Congress? I thought it was the opposite way, that the canon of statutory construction was that an earlier Congress cannot bind a later Congress. Well, in essence, Congress can craft a constitution and say all laws have to abide by the constitution. Everybody says that everything has to abide by the constitution, so the question is in what is the constitution? But I just was interested in your response on whether the ACA as the later statute would govern any question about how to interpret the constitution. No, I think it's clear that without specifically rejecting it that RFRA applies and I don't think any party has contested that it does. I don't think that's an issue here. Could I ask sort of a threshold question? You're representing various people, various institutions. The regulation that you're challenging, if I'm looking at the right one, part B talks about self-insured group health plans and part C talks about insured group health plans. Is your argument, do you have any arguments that would win in one but not the other? No, it applies equally to all of them. Your arguments apply without drawing the distinction between B or C, is that right? Absolutely. All of the Tennessee entities are fully insured and the Michigan entities are self-insured. The argument applies the same, specifically that all of these parties are required to continue this relationship with either insurers or administrators or providing the services. There is an additional argument with respect to the self-insureds and that is that the self-insured Michigan entities actually have to amend their plan documents and appoint the third party administrator as the plan administrator. And so doing all of those things is additional acts but in some ways it's just icing on the cake. Wouldn't the same thing apply to the insured group health plans if they didn't want to provide the contraceptives? It would apply to the self-insureds but the self-insureds don't appoint the insurer as the administrator. It's just different by operation of a reason. How does it get to be the administrator then? Well, the Tennessee entities simply hire an insurance company and the government has the ability to regulate insurers so the government says insurers you must provide these services. They can't do that. The government can't order third party administrators. It's pretty similar then. Yes. Is there any way that you can trace athlete funds going to contraception? Well we have not built a record on that at the preliminary injunction stage. In the comments provided to the government there were insurance experts who questioned the whole nature of no cost sharing. That record is not in this case yet. In this case we are simply making the argument that Catholic doctrine states that the cooperation with the scheme, the facilitation, the continued contractual relationship with the provider who ultimately provides these services pursuant to the relationship that was created by contract is enough in that it violates Catholic faith. Whether or not they have to pay for the services. What exactly is the facilitation in the case of the group of the insurance company situation, not the self-insured? Well, it's the same as with the... I'm sorry, and your question is with... With respect to the non-self-insured, what exactly is the facilitation that you're complaining about? Well they have to contract and maintain a relationship with an insurance company who is going to provide services to which they object. That to the Catholics is enough facilitation. They are not permitted by their faith to maintain a contractual relationship with an insurer who is going to provide services to their employees that are not in accord with Catholic faith. And then it is the continuing through all of the administrative functions that happen between employer and employee and insurance company of providing information and employee numbers and all of that. The insurance company already has the employee numbers, right? Well it is a continuing communication between the two. But certainly the contract itself continues throughout. And if the Catholics were to fire the insurance company and say my faith prohibits me from having a contractual relationship with you, were they to do that then they would be subject to onerous fines. Well could they become self-insured at that point? And if they're self-insured, could they just simply say we do not believe that we should pay for this and sign a certificate? And you're saying they have to deliver the certificate to... The only difference then if they became self-insured is they would be just like the Michigan entities that have an administrator and the government requires the administrator to provide the services. There really is no difference. They're still in a contractual relationship. Can somebody be truly self-insured without a third party? No, unless they're in the business of insurance. They simply don't have the logistical and administrative capacity to administrate their own claims. They cannot do that. And were the government to say look, the only way that you can... Why can't an organization, a charitable organization, administrate their own claims? I suppose it's because they're not in the insurance business and all of those... Why can't they... I suppose they require the knowledge to be able to do it. These plaintiffs just simply don't have the logistical capacity to do that. But if we were to place that requirement on them, that in order to avoid violating your faith, you have to engage in this business, would still be a substantial pressure on them to violate their beliefs because any corporate organization who does not self-administer, and that is basically all corporations, it would be forcing them to do something they would not want to do. That would be expensive. That would be logistically difficult. Talking about violating your beliefs, suppose I am a genuine, dedicated pacifist. I cannot withhold that part of my income tax that goes to the Defense Department. No you cannot. And the Supreme Court was very clear in Lee that you cannot. And that is the second part of the RFRA analysis. That is, you can have a religious belief, just like these Catholics do, and you can say I don't want to do this. But you may still lose. And the reason you lose is for the reason articulated in Lee, which is there is a compelling interest in the tax code, and there is no least restrictive means of accomplishing the tax code's goals. Even if I set up an escrow account and pay all of that portion of my income tax that would have gone to the Defense Department, and put it in an escrow account, and the money is to go to disaster relief, I cannot do that. Even in that circumstance, because in Lee, the Supreme Court said there has to be a uniform and consistent system of the tax code that cannot be one-offed by various individuals based upon their religious beliefs. So in that instance where you can pass the strict scrutiny analysis, you can trump religious beliefs. Here, there is not a single court in the country that is engaged in the strict scrutiny analysis of the contraception mandate and determined that it can pass strict scrutiny. Doesn't the burden have to be substantial, though, before you get to that? No, and as a matter of fact, it says substantial burden, and the Sixth Circuit has identified that, at least in the RLUIPA context, that that test is done, the substantial modifies the pressure. You identify the religious exercise, and then you determine whether there is substantial pressure to violate that belief. Was that where Judge Quist went astray, in your view? It was. Any other way he went astray? Well, yes. He also spoke about how, in his mind, there was some attenuation between the participation and the ultimate use of contraceptives by the employees. But again, that is a religious determination. That is looking at the facts and saying, I think this really isn't so bad. You're sufficiently removed. Catholics have been clear that the acts that are required of them are not sufficiently removed, and Thomas in the Supreme Court said there's only one entity that can draw that line, and that is the believer, not the court. So if the court were to engage in what is substantial and what is not, in each instance, for a Jew to flip a light switch on a Saturday, is that substantial or not to their faith? That is not the province of the courts. It is only the province of the believer. Thank you. I would like to ask a couple of technical questions, if you have a moment. Just dealing with the Administrative Procedure Act, one is sort of a comment. I'm puzzled that the statutory claim under, what is it, the Weldon Act, is referred to as an Administrative Procedure Act claim, whereas the challenge under the Constitution is not referred to as an Administrative Procedure Act claim. I just don't understand the terminology, really. Administrative Procedure Act requires that we overturn things that are against the Constitution and against the statute. So that was just a little semantic quibble. The case that really is an Administrative Procedure Act claim is this notice and comment claim, because that relies on the procedural requirements of the Administrative Procedure Act. But the regulation that you're challenging was subjected to notice and comment. Isn't that correct? Well, not... The one that I was reading from, I thought that's what you were attacking. Effective August 1st, 29 CFR 2590.715, that was not subjected to notice and comment or it was? There was notice and comment about the accommodation itself, but the Preventative Services Act that imposes the obligation itself was not subject to notice and comment. The Act wasn't subject? Is that what you're saying? Statutes don't have to be subject to notice and comment. No, the Preventative Services Mandate itself was issued by the Department of Health and Human Services, not subject to notice and comment. That's preceding this, right? What relief are you asking for? Are you asking for those definitions to be changed or are you asking for this requirement that in order to get an accommodation, they have to fill out the self-certification? I thought that's what you were challenging. No, we're challenging the application of the Preventative Services Mandate to the Catholic organizations. The accommodation, the procedures of the accommodation are equally objectionable and were subject to notice and comment. But the point is, it's almost as if it's a defense. The point is that the accommodation doesn't fix the religious burden. So it is the mandate itself that imposes the religious burden. Where does the mandate come from? It comes from the statute? The mandate comes from the Department of Health and Human Services, who identified preventative services and required... So that's what you would like us to change, is what's in the list of preventative services? No, the requirement that from the original definition that these entities have to abide and are not exempt from that Preventative Services Mandate. Where is that? That's in the statute. I guess I'm lost. No, that is issued by the Department of Health and Human Services that define who is subject to the statute and who is not. That couldn't have been changed in the notice and comment to these regulations that you're trying to overturn? It could have. It could have. In fact, there are thousands of comments. So in the ordinary sense, you know, lots of times government will do something and they don't go through notice and comment and someone challenges it. So then they go through notice and comment and then it's okay. So why doesn't the fact that this went through notice and comment, where all of these arguments you could make doubtless were made, cure any notice... I'm not talking about all these other issues. I understand there's different issues. I'm just having trouble seeing this notice and comment argument. You're right, Your Honor. With respect to the last part of the commendation that went through notice and comment. Okay. Thank you. Thank you. Good morning, Your Honors. Adam Jett for the government. May it please the court. The plaintiffs do not have a religious objection to stating that they oppose providing contraceptive coverage or to instructing their insurance companies or third party administrators not to do so. In fact, that is exactly what they want to do and that is exactly what they've done in the past. Their only objection is to the fact that if they do so now under what is called the accommodation, that after they tell their insurance company, we are allowed to opt out, we're choosing not to do this, that then the government will require the insurance company to provide contraceptive coverage. Essentially what the plaintiffs are trying to do is they're trying to block that mechanism by which the government requires an insurance company to provide health benefits to thousands of employees. That's an extremely novel conception of what would count as a substantial burden under the Religious Freedom Restoration Act. As this court said in AutoCam, when you look at a claim under the Religious Freedom Restoration Act, you look at the kinds of claims that had been brought pre-Smith. Brought what? That had been brought before Employment Division v. Smith, Your Honor. The kind of mechanism at issue here is essentially how all opt outs work. If you look at conscientious objection to the draft, under Title VII an employee can say to his employer, I can't work on a Saturday, and all of those things, when you say you can't do something, what ordinarily happens then is somebody else steps in and does it. Really, that's what it is that the plaintiffs seem to be objecting to. Is there a difference between the self-insured situation and the group insurance situation? The kind of legal technicalities are slightly different as between the two. I think I understood my friend during his argument to say that actually that distinction doesn't matter to the argument that he's presenting before the court, but let me actually address the sort of ERISA specific argument that he's made because I think maybe there are a couple of things that have gotten lost in my friend's presentation. There are three specific things to say about that. The first is just to be clear, the only self-insured plaintiffs in this case are self-insured through church plans, and those church plans are exempt from ERISA. To the extent that out there in the ether, there may be an argument about the kind of workings of ERISA as it relates to self-insured plans and third-party administrators, that is a different case. That is not the case that's before this court today. If church plans are exempt from ERISA, are they exempt from all relevant regulations, i.e., HHS regulations? They are not, Your Honor. As of course, Your Honor is aware, both the regulatory and statutory mechanisms are very The way that this sort of overall Affordable Care Act set of requirements are implemented involves statutory authority from the Internal Revenue Code and from ERISA and from various HHS statutes. The church plan, the plan itself, is subject to regulation by the Treasury statute, but Does it have to comply then with the contraceptive mandate? So if the plaintiffs did not opt out, then the answer is yes. If they do opt out, then as you're aware, in our view, that's it. They've opted out. Now, the mechanism by which the government requires third parties to step in for self-insured plans is that the government requires third-party administrators to step in. Now, a third... Where do you get those third-party administrators? I'm sorry, Your Honor? How does the government enforce that? So ordinarily, the only authority to regulate a third-party administrator is ERISA. So even though the Treasury statute may have applicability to a church plan, once the plaintiffs opt out with respect to their church plan, that's it. That disappears, and the Treasury statute no longer sort of exercises authority. What ordinarily would be left then is the ERISA authority to regulate a third-party administrator, but with respect to church plans, ERISA doesn't apply. And so therefore, the government can offer to pay a third-party administrator, can say, look, if you will voluntarily step in and provide this contraceptive coverage after these guys choose not to, we'll cover your costs, and we'll pay a little bit more above that. But the government can't require the third-party administrators to do so. And so to the extent that the plaintiffs have this kind of technical argument, and I'll address those technicalities in a moment, but I do just want to say, to the extent that they have this technical argument about treating the form as a designation under ERISA, that's a different case. That's not this case. But let me actually just address those ERISA technicalities, because I think my friend was actually quite inaccurate when he was up here describing it. He, at least as I understood it, he made it sound like, in addition to sending in the form, that a plaintiff needs to do all sorts of other things, go hire someone, separately designate. I don't know sort of exactly what he was saying here. But the way that he constructed the argument in his brief is actually just to truncate a sentence from the regulations. In the truncated version, he says that the form is a designation. If you actually read the full sentence, it says that the form is treated as a designation. And essentially what's going on, Your Honor, is this. Under ERISA Section 316, the Department of Labor has the authority to say that somebody has a fiduciary duty and then to require here the third-party administrator to provide contraceptive coverage. They don't do that all the time. They only do that if an employer chooses not to provide contraceptive coverage. So it's because the employer submits that form and opts out that then the government says, okay, we're now going to put this responsibility on you, the third-party administrator. And so when the regulations say that it's treated as a designation, that is essentially just ERISA speak for that. But the third response to the ERISA-specific concern, Your Honor, is just if for some reason – I mean, again, I think my friend kind of disclaimed that he has any argument that's specific to the self-insured context. But if for some reason there was some special problem with the self-insured context, obviously self-insured plaintiffs could just choose to operate with an insurance company, as many employers do, and in fact as many employers that are before this court do. If I could just briefly address the colloquy between my friend and Judge Nixon. Judge Nixon, you asked my friend the hypothetical question about trying to set aside tax dollars that were paid to the government. There's actually two similar sets of cases have come up. We cite them in our brief. One is the Supreme Court's Tilton decision, and the other is the Supreme Court's Allen decision. And in both of those cases, people objected to having to make payments to the U.S. Treasury to sort of send in their tax dollars, given that those payments might eventually be used to pay for – I'm sorry, I'm not sure if it's actually the U.S. Treasury or State Treasury – but that those payments would then eventually be used to pay for books that were provided to religious schools. And although my friend is probably correct that in the military context it would easily survive strict scrutiny. Indeed, we think that the programs here survive strict scrutiny here, too. The courts in Tilton and Allen did not have to resort to any kind of strict scrutiny analysis. They just said that doesn't count as a burden under the free exercise clause. And just to be clear, the plaintiffs in those cases were very careful. They did not say all that we're objecting to is the fact that the government will provide these books. Rather, they actually said we don't want to have to sign this check, that the law compels us to take an action that we don't want to have to take. In fact, I think we excerpt from one of the briefs in that case where they actually compared it to being compelled to attend church. And in those two pre-RIFRA cases, the Supreme Court said that that doesn't count as a burden under the free exercise clause. Is the law still the same after RIFRA? Our understanding is that it is. I mean, you know, certainly we take this court at its word in AutoCAM when it said that RIFRA needs to be understood in light of the free exercise cases that were brought free smith. And again, I mean, just to emphasize, an opt-out is in some sense quite different from a number of other actions that happen out there in society. I mean, in some sense, the argument for the religious objectors was even stronger in something like Tilton where they were writing the check. Because there, the money might sort of eventually actually go to the provision of those rights. It would be traceable in some sense, whereas here, the regulation, I'm sorry, your honor? That's correct. I mean, I don't think the plaintiffs have alleged that it's traceable, but certainly the regulations explicitly require that the money be entirely segregated. So any such allegation would just fail as a matter of law. So I mean, it would seem in some sense the sort of analogy from the plaintiff's objection to cases like Tilton and Allen would actually be that if they wrote the check and could make sure that none of the money went to the books, that they could still object. Because if none of their money goes to religious books, then someone else's money will go to books. And these kinds of opt-out mechanisms, I mean, have been on the books in any number of contexts for hundreds of years. And no one has ever suggested that each and every program, every time I say, I can't participate in X, and as a consequence, the government will say, okay, we're going to have someone else participate instead, that each program has to be subjected to compelling interest analysis. So you would say that Judge Quist was analytically complete in his analysis, notwithstanding that he didn't get into a compelling interest analysis? I mean, I'm not sure that I want to embrace each and every sentence in his opinion, but I think overall... You would not say that to be complete, it should have gone further and talked about whether there was a compelling interest analysis. No, absolutely. You didn't need to do it, is what you're saying. That's absolutely correct, Your Honor. I mean, just to make something very clear, because I think this may get lost in the plaintiff's briefs a little bit, this is well-established both from pre-RIFRA free exercise law and from the legislative history of RIFRA itself. When RIFRA requires a substantial burden, RIFRA does not just mean kind of colloquially what someone might think of as a substantial burden on their exercise of religion. In fact, if you look, for example, at the Ling case, a pre-RIFRA case, where the consequence of a federal program was essentially that the plaintiffs there would not be able to pray in the way that their religion requires, what I'm sure kind of colloquially we would all say is a really big burden on your exercise of religion. Nonetheless, the Supreme Court said, no, that doesn't count. What is a substantial burden on the exercise of religion includes a decision about the kind of burden. And our argument is that this kind of burden, that you're just opting out and then that somebody else will step in, just can't constitute a substantial burden. As the Seventh Circuit held in Notre Dame, and we think it does, although the cases aren't entirely on point, follow somewhat logically from some of the other pre-RIFRA free exercise cases. When you get from cases like Bowen and from cases like Ling, is that an individual can't challenge under then the free exercise clause, and now it would be RIFRA, just something that the government is doing. And essentially what the plaintiffs are trying to do here is they're trying to collapse their decision not to do something with the fact that the government will do it only if they're not doing it. Similarly, you have cases like Cutter v. Wilkinson and Yoder and Sherbert, where the court says you need to be very concerned about burdens that are imposed on third parties. Here, the thousands of employees that, if plaintiffs were able to block the government from stepping in after they step out, would not be able to obtain health coverage. And again, their sole argument is, their sole religious objection, is that the government will step in and require third parties to provide that health coverage. Could you address the Administrative Procedure Act notice and comment argument that he made today? Absolutely. You know, I'll tell you, it sounded like, well, first it sounded like my friend may have actually conceded his own APA argument. But it sounded like maybe he had a slightly different argument here today than the one that I saw in the brief. So I'd be happy to address maybe just kind of potential APA arguments that my friend may have been raising. Well, as I took it, it was an argument that really what they're challenging is not this regulation here, but something else. So at times it sounds like he's saying they're challenging either the religious opt-out that is primarily at issue here, or the kind of complete exemption for churches, and all of that has been subject to notice and comment. The argument that I understood him to be making in his brief is a little bit different, which is that HRSA, a subset of HHS, created essentially just kind of a list of preventative services that are necessary for good health. That he's correct. That list was not subject to notice and comment. We don't think that that... That wouldn't require it, because that's just referred to by the statute. That's exactly... Not by the statute, but by the regulation that he's challenging. Well, it's actually also referred to by the statute. So Congress itself in the statute lists certain preventative services, and among others says sort of preventative services for women as exist in the HRSA guidelines. Now, the HRSA guidelines didn't exist at the time, so they were then created. But the actual... But if that's the argument, then notice and comment would... If Congress says provide a list, and then an agency thereafter provides a list, you could say that that needs to be subject to notice and comment. We actually disagree with that, Your Honor, and I would point, Your Honor, to actually to many of the cases that the plaintiffs cite themselves, and we address them in our responsive brief. The line that... Of course, Your Honor is aware many of these cases have come up in the D.C. circuit, but there have been other courts that have touched on it too. And the line that they've drawn is if the substantive obligation comes from the thing that the agency creates, so, you know, the sort of canonical example is if Congress says, you know, create regulations to sort of achieve X goal, and then the regulation imposes an obligation, then that is actually a rule, and it needs to be subject to notice and comment. But if it's simply that Congress imposes an obligation with respect to just kind of a list of... Kind of a factual list, that under the APA, and I understand that there are certain other organic statutes that might require it, but under the APA, that is not subject to notice and comment. And actually in the plaintiff's reply brief... I have to... I hate to burden our argument time when something as small a part of the case is this, but I'm just not following that. If a statute says you need a license to... For the following... For a list of things that the agency shall determine, and then the agency later says what those things are, that's not subject to notice and comment? Would you do that by rule? Well, although I think that in your honors hypothetical, that would not be a rule. This case is even... Why would it conceivably not be a rule? Because again, there the substantive obligation is coming from the statute, and here, we're even a little bit further from the line, because here Congress actually just said sort of list of preventative services. I mean, maybe another way to think about it is if you look at the other lines of the statute, Congress said, I think for example... Like it's an interpretive rule? Is that what you're saying? No, it's just not a rule at all. It's neither an interpretive rule nor a legislative rule. So when Congress said, for example... I don't find that persuasive. Does that mean they have a colorable notice and comment argument here? I mean, your honor, I would encourage the court to read some of the cases that they cite. Indeed, actually the case that they cite in the reply brief, the only case that they cite in the reply brief, they don't even try to address our treatment of their other cases, is a case that wasn't even deciding whether something was a rule or not, but just whether it was a legislative rule or an interpretive rule. And there, the very first thing that the D.C. Circuit says is the obligation doesn't come from statute. The sole obligation comes from this regulation. You're not willing to rely on the fact that the procedures that they're talking about and challenging in this case have been subject to notice and comment, regardless of whether those were required to have notice and comment or not? I mean, I'm certainly happy to rely on that as well. I mean, I don't want to misrepresent anything to the court. The notice and comment with respect to the regulations that are primarily at issue here was not specifically about the list, much as Congress has said that lists created by certain private parties are imported by statute, much as if HHS had just in the past, with no particular legal significance, just had a list saying these are the kinds of preventative services that we think lead to good health. Congress can point to that list and say, okay, we are imposing a legal obligation with respect to this list. And every time a little change in the list gets made, it doesn't need to be subject to notice and comment, because the legal obligation specifically comes from the statute and not from the list. There may be some examples kind of out there in the world, and maybe this is what Your Honor's... I understand. I just... Was there comment regarding the list? There was not notice and comment with respect to that list, no. There may be some examples out there in the world where just kind of, you know, lists of things are subject to notice and comment, even if the list... This is a list of services that they deem to be required by the statute. Is that what it is? No. This is a list of services that are deemed to be necessary to women's health. The requirement comes from Congress. Congress says, we are going... Is that what you said? Or is that not what I said? Well, Your Honor, I think that is what you said. The statute says needed for women's health, but doesn't say what is needed for women's health. Then the agency later substantively says, this is what is needed for women's health. Your Honor, this is a... You can argue that is not a rule. It's kind of an uphill battle here, but my question is, they're not really challenging what's on the list here. Is that correct? Or they are challenging what's on the list? You know, I understand my friend who had basically abandoned his challenge to what's on the list at the podium. I read his brief in some sense to be challenging what's on the list. What I do just want to make clear is this is a very fine-grained distinction in the APA, and that's why I think maybe we may just be speaking past each other a little bit, which is I'll kind of give you the hypothetical, which is that if Congress says that an HHS agency is required to publish regulations for the purposes of, you know, promoting health, and then those regulations say you are required to provide certain services, the substantive obligation comes from the regulations, and those would be subject to notice and comment and deed. Any of the regulations here that are kind of like that were subject to notice and comment. If instead, Congress says we are going to require that employers provide preventative services, so the obligation, the requiring preventative services comes from the statute, and they just say the preventative services that are necessary for health, they could then get the that are necessary for health from a private scientific organization, which is in fact where this list sort of ultimately came from. It's just that HHS reviewed the list. Or they can ask if an agency has already made such lists, they can point to that list. Or if the agency doesn't have any operative effect at that time, or you're saying it would have some operative effect at that time, that's what it is. Your Honor, I want to make sure that I'm understanding the hypothetical. I mean, the fact that... You're hypothetical. I'm just trying to understand it. Sure. The fact that Congress has imposed the legal obligation, the fact that the statute is what tells people to do, is what matters to whether it counts as a rule. I appreciate that we may just be speaking past each other, but I would encourage the court to read... What cases would you tell us to look at? I would encourage the court to look at the footnote, I believe it's on the last page of our brief, which addresses, I think, all or if not most of plaintiff's cases. Plaintiffs in their reply brief then point, essentially sort of abandon all those cases, then point the court to a D.C. Circuit case called NRDC versus EPA. As noted, I should say that actually that case isn't even about whether something is a rule. It was assumed that it was a rule, and the only question is whether it was an interpretive rule or a legislative rule. But there, right up top, the D.C. Circuit made clear that the obligation did not come from the statute. Rather, the obligation came from the regulation. And was this issue, this APA issue, raised below? I think the plaintiffs, I guess, have raised two different APA arguments, or what they've labeled APA arguments. One is the Weldon Amendment argument, which Judge Rogers was speaking with my friend about. Right. This argument. Was this argument raised by them below? In one of the two cases, it was, yes. Which one? I'm actually not positive. I believe it was Michigan Catholic Conference, but I'm not sure. Thank you. Thank you, Your Honor. So if I could ask you to start with that question, did you raise this APA argument in one of the cases, or both of the cases below, and if so, which ones? The APA argument was raised in the Michigan cases, but not in the Tennessee cases. And to be clear, I did not mean to not make clear that it is the list of preventative services that gives rise to the APA issue. The government passed a statute that said you have to have preventative services, and then later, issued by press release, what those preventative services were without notice and comment. The government can't prevail on its claim that the statutory language, which is what I heard here, incorporated by reference the then non-existent guidelines and list of preventative services that were done after the fact by press release without notice and comment. Included within those preventative services are services that Catholic faith has an objection to. So that's the essence of the APA claim. And that's cured by subsequent notice and comment of rules that implement the obligation to opt out of that if you don't like it? Well, because there was no subsequent notice and comment on what the makeup of the preventative services would be. The subsequent notice and comment was notice and comment about how the accommodation would work or how we would define religious employer. If you didn't opt out of it, why does it matter? Well, I think that's the most important point I want to make in rebuttal is that we do not opt out of it. Council kept referring to this as an opt out. There is one opt out in the statute. It's the religious employer exemption. And if it wasn't a burden upon all of those who don't have the religious employer objection, there wouldn't be a religious employer objection. Everybody would just get this accommodation if it fixes the problem. But the government specifically said we're going to have these people, religious employers, who are entitled to opt out. That's not us. We're going to have these people who get the accommodation. If the accommodation fixed everything, that's all there would be. There must be some burden here. And the difference between the conscientious objector, who truly does opt out, is once they state their conscientious objection, they're done. Here, these entities are not done. What if they nonetheless have a religious objection to being put in a position where if they opt out, someone else will come in? Well, in that circumstance, they don't have any continuing... relationship with the person who then comes in later. Here, we have a continuing relationship. We have a contract with an insurance company. What if their religion says it doesn't matter whether you have a continuing relationship? We just have to listen to the religion, then, right? Right. And there, the test is clear. You have to determine whether that actually is a sincere belief. And we haven't heard anybody ever articulate that. And then you have to determine, if somebody comes in and says, here's what my religion says, if I opt out and you put someone else in, that violates my religion, certainly that's not what the plaintiffs are saying. If somebody came in and articulated that, then you would go to strict scrutiny and you would trump that by saying there is no other mechanism. The main point here is, there are extraordinary mechanisms for the government to provide these services. These appellants are not trying to prevent anybody from getting anything. That could not be more clear. We just don't want to be involved. The government could do it through tax breaks. They could do it... They already do it through Title 10. And that's the strict scrutiny analysis. And when there is a reference to harm on these employees, that's built into RFRA. Because you don't get an accommodation if you can advance a compelling interest and say there's no other way to do it. That is the weighing that's built into RFRA and was set forth in Qatar, where we say properly applying RLUIPA, like RFRA, you will look at these burdens. Because if the government can say, look, we have a compelling interest for these particular plaintiffs, employees, not all employees, not just let's talk about women's health care, but for these particular ones. And I don't know how they can say that with respect to the Michigan plaintiffs, because counsel just came up here and said, well, we can't enforce this anyway in Michigan. So how can they have a compelling interest that Catholic employees in Michigan be subject to this mandate when they say, well, they don't really have to follow it anyway? That... Your red light's been on for a little while. Thank you. Thank you. Thank you both for your argument.